IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Royal International, LLC, | Case No.:24-cv-5299 |
| Plaintiff, | |
| v. | Judge: |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | Magistrate: |
| Defendants. | |

# COMPLAINT

Plaintiff Royal International, LLC hereby files this Complaint for, *inter alia*, trademark infringement and related claims against Defendants, on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

## THE PARTIES

1. Royal International, LLC is a limited liability company organized and existing under the laws of Ohio and has place of business at 7900 Whipple Ave. N.W., North Canton, Ohio 44720. Plaintiff sells its products all over the world.

2. Defendants identified on Schedule A, filed under seal, are believed to be individuals and unincorporated business associations who, upon information and belief, either reside in foreign jurisdictions or source and distribute counterfeit goods for sale online from foreign intermediaries. The true names, identities, and addresses of Defendants are currently unknown.

3. Defendants conduct their illegal operations through fully interactive commercial websites hosted on various e-commerce sites, such as Amazon, eBay, Wish, and Alibaba ("Infringing

Websites" or "Infringing Webstores"). Each Defendant targets consumers in the United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit and/or infringing products that violate Plaintiff's intellectual property rights ("Counterfeit Products") to consumers within the United States, including the State of Illinois and the Northern District of Illinois. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

4. Through the operation of their Infringing Webstores, Defendants are directly and personally contributing to, inducing and engaging in the sale of Counterfeit Products as alleged, often times as partners, co-conspirators, and/or suppliers.

5. Upon information and belief, Defendants are an interrelated group of counterfeiters and trademark infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products. Upon information and belief, all Defendants share a common source in their manufacturing of products as shown in Exhibit 3.

6. Defendants intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting and infringing operations. The identities of these Defendants are presently unknown. If their identities become known, Plaintiff will promptly amend this Complaint to identify them.

7. Upon information and belief, Defendants are primarily Chinese and all market counterfeit products and/or market their products which violate the registered trade dress of Plaintiff. On information and belief, some or all of Defendants source their goods from a common manufacturer or consortium of manufacturers united under the direction or influence of local or national governments. Upon information and belief, the counterfeit products all have the same

shapes, are made from the same materials, and are made by a single source of manufacture. Common Manufacturer is attached as Exhibit 3 with a machine translation of Exhibit 3 attached as Exhibit 4.

## JURISDICTION AND VENUE

8. This is an action for trademark counterfeiting and trademark infringement, and unfair competition and false designation or origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of Illinois.

9. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiff's claims for unlawful and deceptive acts and practices under the laws of the State of Illinois.

10. This Court has personal jurisdiction over Defendants in that they transact business in the State of Illinois and in the Northern District of Illinois.

11. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

**BACKGROUND FACTS**

12. Plaintiff is engaged in the business of manufacturing, distributing, and retailing animal care products throughout the world, including within the Northern District of Illinois District under the federally registered trademarks identified in Paragraph 13 below. Plaintiff's primary products are animal husbandry and care items. The Marks, identified in Paragraph 13 below, covers the nonfunctional trade dress of the feeding bags for small mammals, specifically contrasting fabric sewn holes in animal feed bags. Defendants' sales of Counterfeit Products are in violation of Plaintiff's intellectual property rights and are irreparably damaging Plaintiff.

13. Plaintiff is the owner of all rights, title, and interest in and to, *inter alia*, the trade dress illustrated below that is protected by the registrations attached under seal as Exhibit 1 (the "Marks"). Genuine and authentic copies of the U.S. federal trademark registration certificates for the Marks are attached as Exhibit 1.

14. The registrations are valid, subsisting, unrevoked, and uncancelled. The registrations for the Marks constitute *prima facie* evidence of validity and of Plaintiff's exclusive right to use the Marks pursuant to 15 U.S.C. § 1057(b).

15. Plaintiff's Marks are recognized by the consuming public. As detailed below, Plaintiff has been using the Marks for many years in connection with the advertising and sale of animal feeding and care accessories and apparatuses ("Plaintiff's Product") in interstate commerce, including commerce in the State of Illinois and the Northern District of Illinois.

16. The Marks have been widely promoted, both in the United States and throughout the world. The whole of the consuming public associates the Marks with Plaintiff, but also recognize that Plaintiff's Product sold in the United States originates exclusively with Plaintiff.

17. As of the date of this filing, Plaintiff's Product is sold throughout the nation and the

world in various stores including internet webstores such as Amazon.com.

18. Plaintiff maintains quality control standards for all of Plaintiff's Products. Genuine versions of Plaintiff's Products are distributed online via their own website, https://www.derbyoriginals.com/, as well as third party outlets such as Amazon.com.

19. The Marks are a highly visible and distinctive worldwide symbol of excellence in quality and uniquely associated with Plaintiff and, as a result, Plaintiff's Products bearing the Marks have generated a substantial amount of revenue for Plaintiff over the years.

20. The Marks have never been assigned or licensed to any of the Defendants in this matter.

21. The Marks is a symbol of Plaintiff's quality, reputation, and goodwill and has never been abandoned.

22. Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, marketing, and otherwise promoting the Marks.

23. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

24. Recently, and for a while in the past, Plaintiff has identified the Marks on the Infringing Webstores and felt the impact of Counterfeit Products designed to resemble authorized retail Internet stores selling the genuine Product that Defendants had reproduced, displayed and distributed without authorization or license from Plaintiff in violation of the Marks.

25. Defendants' use of the Marks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

26. Defendants have manufactured, imported, distributed, offered for sale, and sold Counterfeit Products using the Marks and, upon information and belief, continue to do so.

27. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the Marks in connection with the advertisement, offer for sale, and sale of the Counterfeit Products, through, *inter alia*, the Internet, as illustrated in Schedule A. The Counterfeit Products are not genuine products sold by Plaintiff under the Marks. The Plaintiff did not manufacture, inspect, or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution. Each Infringing Webstore offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

28. Defendants falsely advertise the sale of authentic Product through the Infringing Webstores. Defendants' Infringing Webstore listings appear to unknowing consumers to be legitimate web stores and listings, authorized to sell genuine Plaintiff's Product.

29. Defendants also deceive unknowing consumers by using the Marks without authorization within the images of the listings on Infringing Webstores in order to attract various image search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiff's Product and in consumer product searches within the Webstores.

30. Defendants go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate the Infringing Webstores. Upon information and belief, Defendants regularly create new Webstores on various platforms using the identities listed in Schedule A of the Complaint, as well as other unknown fictitious names and addresses. Such registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their illegal

counterfeiting operations, and to prevent the Infringing Webstores from being disabled.

31. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling Counterfeit Goods that infringe upon the Marks unless preliminarily and permanently enjoined.

32. Plaintiff has no adequate remedy at law.

## COUNT ONE
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGMENT
## (15 U.S.C. § 1114)

33. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

34. The Plaintiff's Marks and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value. The Marks are highly distinctive and has become universally associated in the public mind with Plaintiff's Product. Consumers associate the Plaintiff's Marks with the Plaintiff as the source of the very highest quality products for their animal care products.

35. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's Marks and the fact that Defendants' Counterfeit Products are sold using a mark identical or confusingly similar to the Plaintiff's Marks, the Defendants have manufactured, distributed, offered for sale and/or sold the Counterfeit Products to the consuming public in direct competition with Plaintiff's sale of genuine Plaintiff's Product, in or affecting interstate commerce.

36. Defendants' use of copies or approximations of the Plaintiff's Marks in conjunction with Defendant's Counterfeit Products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and

is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

37. The Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

38. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

39. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use of contrasting fabric holes in their animal feed bag product is likely to cause confusion to the general purchasing public.

40. By misappropriating and using the Plaintiff's Marks, genuine product images, and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

41. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

42. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a), in that Defendants' use of the Plaintiff's Marks, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

43. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT THREE
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES
## (815 ILCS 510)

44. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

45. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

46. By misappropriating and using the Plaintiff's Marks, genuine product images and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

47. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to the Defendants' profit and to the Plaintiff's great damage and injury.

48. Defendants' aforesaid acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 et seq., in that Defendants' use of the Plaintiff's Marks, genuine

product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

49. Plaintiff have no adequate remedy at law and, if the Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

1. That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

   (i) using the Plaintiff's Marks or any reproduction, counterfeit, copy or colorable imitation of the Plaintiff's Marks in connection with the distribution, advertising, offer for sale and/or sale of merchandise not the genuine products of the Plaintiff; and

   (ii) passing off, inducing or enabling others to sell or pass off any Counterfeit Products as genuine products made and/or sold by the Plaintiff; and

   (iii) committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   (iv) further infringing the Plaintiff's Marks and damaging Plaintiff's goodwill;

   (v) competing unfairly with Plaintiff in any manner;

  (vi) shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and that bear the Marks or any reproductions, counterfeit copies, or colorable imitations thereof;

  (vii) using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Webstores, listings, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products;

  (viii) operating and/or hosting websites at the Infringing Webstores and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's Marks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's Marks; and,

  (ix) registering any additional domain names that use or incorporate any of the Plaintiff's Marks; and

2. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

  (i) the distribution, advertising, offer for sale and/or sale of any product that is not a genuine Plaintiff Product or is not authorized by Plaintiff to be sold in connection with the Plaintiff's Marks; and

      (ii)      shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's Marks or any reproductions, counterfeit copies, or colorable imitations thereof.

      (iii)     possessing any product bearing the Plaintiff's Marks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's Marks. As part of compliance with this provision, we ask that Defendants or those who possess Defendants' infringing goods, segregate and destroy infringing goods; and,

3.    That Defendants, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff's a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court.

4.    Entry of an order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, Webstore hosts or their administrators that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of Counterfeit Products using the Plaintiff's Marks;

5.    That Defendants account for and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Marks be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. § 1117;

6. In the alternative, that Plaintiff be awarded statutory damages of One Hundred Thousand United States Dollars and No Cents ($100,000.00) for each and every use of the Plaintiff's Marks counterfeited by each Defendant.

7. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

8. Grant Plaintiff such other and further legal relief as may be just and proper.

Respectfully Submitted,

Dated: June 25, 2024

By: _____/s/ Rishi Nair_____

Rishi Nair
ARDC # 6305871
Keener and Associates P.C.
161 N. Clark Street, Suite #1600
Chicago, IL 60601
(312) 375-1573
rishi.nair@keenerlegal.com